

# SUPREME COURT OF ARKANSAS

No. CV–13–995

| | |
|---|---|
| ALLTEL CORPORATION AND ALLTEL COMMUNICATIONS, INC. <br> APPELLANTS <br><br> V. <br><br><br> PETER ROSENOW, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS <br> APPELLEE | **Opinion Delivered** September 18, 2014 <br><br> APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-06-182-3] <br><br> HONORABLE GRISHAM A. PHILLIPS, JUDGE <br><br> <u>AFFIRMED ON DIRECT APPEAL; CROSS-APPEAL MOOT</u>. |

## PAUL E. DANIELSON, Associate Justice

Appellants Alltel Corporation and Alltel Communications, Inc. (collectively, "Alltel"), appeal from the circuit court's second amended order denying Alltel's motion that sought to compel arbitration of a class-action complaint brought by Appellee Peter Rosenow, individually and on behalf of similarly situated persons. Alltel asserts two points on appeal: that the circuit court erred: (1) in finding that Alltel's arbitration agreement lacked mutuality and was thus invalid; and (2) in failing to enforce its valid arbitration agreement. Rosenow cross-appeals, asserting that Alltel waived any right it had to arbitration. We affirm the circuit court's order on direct appeal, which renders the cross-appeal moot.

The litigation began when Rosenow filed a class-action complaint against Alltel, alleging violations of the Arkansas Deceptive Trade Practices Act and unjust enrichment stemming from Alltel's imposition of an early termination fee on its cellular-phone customers.

The circuit court denied a motion by Rosenow for class certification, and this court reversed and remanded. *See Rosenow v. Alltel Corp.*, 2010 Ark. 26, 358 S.W.3d 879. On remand, the circuit court granted class certification by its order of December 9, 2010.

On June 15, 2011, Alltel filed a motion to redefine the class to exclude any customers that had been subject to, and bound by, an arbitration provision in their contracts with Alltel. Rosenow countered Alltel's motion, asserting that Alltel, having failed to previously raise or rely on the existence of an arbitration agreement, had waived any consideration of its arbitration clause and its validity. A hearing was held on the motion on September 26, 2011, and the circuit court, by its order of October 10, 2011, denied Alltel's motion without prejudice.

Some two months later, Alltel filed a motion to compel arbitration of those claims by any class member who had received service from Alltel on or after May 1, 2004. In its motion, Alltel claimed that its "Terms and Conditions" had included an arbitration clause stating that all disputes resulting from Alltel's service shall be arbitrated. Alltel further stated that its policies and procedures in place had been designed to ensure that all Alltel customers were on notice that its provision of service was subject to those terms and conditions, including the arbitration clause. In support of its motion, Alltel presented affidavits from its employees, as well as exhibits, which included the apposite versions of the terms and conditions for its wireless contracts. Rosenow claimed that, even assuming that Alltel had a valid basis for its motion to compel arbitration, Alltel had waived arbitration in the instant class-action litigation. Rosenow further asserted that (1) Alltel's motion to compel lacked

2

specific evidence from which notice to and assent by Alltel's customers could be inferred; (2)

the agreement lacked mutuality and was invalid; and (3) Alltel's terms and conditions and the

arbitration clause were unconscionable and unenforceable. To counter Rosenow's assertion

that Alltel had waived its right to arbitration by waiting too long to assert it, Alltel claimed

that the recent decision by the United States Supreme Court in *AT&T Mobility, LLC v.*

*Concepcion*, 563 U.S. ___, 131 S. Ct. 1740 (2011), had changed the law in this area and that

any "wait . . . resulted from the fact that *Concepcion* was pending . . . at the time of class

certification." After several hearings on Alltel's motion to compel, the circuit court entered

an order denying that motion. The order denied the motion on several bases, including that

(1) Alltel had waived any alleged right to compel arbitration, (2) Alltel's arbitration provision

lacked mutuality, (3) its arbitration provision was unconscionable, and (4) Alltel's motion

failed on policy grounds.

The circuit court later amended its order, and on October 7, 2013, it entered a second

amended order denying Alltel's motion to compel in which it found as follows:

> While I do agree with Alltel's position that it did not waive enforcement of its arbitration in this case, its motion to compel arbitration is denied because Alltel never used arbitration as a sword. Thus, it never respected the arbitration provision it sought to enforce here. The Arkansas Supreme Court held that "there is no mutuality of obligation where one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system." *Independence County v. City of Clarksville*, 2012 Ark. 17, ★7. "Thus, under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties." *Id.* Here, the arbitration provision imposed no real liability upon Alltel. For this reason, Alltel's motion to compel arbitration is denied.
>
> The parties have requested rulings on issues raised by them in their written materials and as presented by them in hearings before the Court. The Court has considered all of the issues raised by both sides, and has denied the Motion to Compel Arbitration for the reasons cited above. To the extent that a ruling on all such issues

SLIP OPINION

not specifically addressed above is required for appellate review, the Court hereby denies each issue and argument raised by the parties and not specifically addressed by this Order as moot.

The previous orders regarding Alltel's motion to compel arbitration and entered on July 15 and 26, 2013, are withdrawn and this Order is substituted in its place.

It is from this order that both parties have timely appealed.

For its first point on appeal, Alltel argues that the circuit court erred in finding that the arbitration agreement at issue lacked mutuality. Alltel asserts that the agreement was, on its face, both unambiguous and mutual. It claims that both it and its customers are equally bound to arbitrate any dispute and that the agreement in no way evidences any reservation of a right by Alltel to pursue judicial remedies while precluding its customers from doing so. Alltel further maintains that the circuit court erred in basing its finding of a lack of mutuality by considering parol evidence, which it claims was inadmissible because the arbitration agreement was unambiguous. Moreover, Alltel contends, even if the circuit court had been permitted to look at parol evidence, the evidence of whether it sued its customers in 2001 or 2002 is irrelevant to determining the mutuality of the agreement in 2004. Alltel avers that the fact that it assessed its customers for late fees and employed the use of collection companies has no bearing on mutuality, because under the agreement both Alltel and its customers remained free to invoke nonjudicial self-help remedies. Finally, Alltel asserts that this court's precedent, which requires an arbitration agreement to be independently mutual, violates the Federal Arbitration Act and should be overruled because Arkansas law does not require independent mutuality for any other contract provision.

Rosenow initially responds that Alltel failed to prove the existence of a contract to

arbitrate. He urges that the terms and conditions relied on by Alltel lack any mutuality because Alltel's customers can be held liable for outstanding service and equipment charges, taxes, fees, and surcharges, as well as Alltel's costs and fees incurred to collect unpaid balances, but Alltel's liability cannot exceed a customer's prorated monthly recurring service charge, and Alltel is not liable for any incidental, special, or punitive damages, or attorney's fees. Likewise, Rosenow contends, mutuality is lacking because Alltel has filed suit against its customers and has never relied on or used the very arbitration provision it now seeks to enforce.

With respect to Alltel's argument that the circuit court erroneously relied on parol evidence in finding a lack of mutuality, Rosenow maintains that Alltel failed to raise its argument to the circuit court; therefore, he claims, it is being raised for the first time on appeal and is not preserved for appeal. Nonetheless, he avers, the parol-evidence rule has no application to evidence introduced to explain course of performance or dealings. Finally, Rosenow contends that this court's precedent consistently holds that all contracts, not just arbitration agreements, must be mutual.

This court reviews a circuit court's order denying a motion to compel arbitration de novo on the record. *See, e.g.*, *The Money Place, LLC v. Barnes*, 349 Ark. 411, 78 S.W.3d 714 (2002). The threshold question to be determined is whether there was a valid arbitration agreement.[1] *See, e.g.*, *Courtyard Gardens Health & Rehab., LLC v. Quarles*, 2013 Ark. 228, 428

---

[1]Contrary to the dissent's claims otherwise, no "new rule" was announced in *Bank of the Ozarks v. Walker*, 2014 Ark. 223, 434 S.W.3d 357. In *Bank of the Ozarks*, this court merely held that when a circuit court has not made a determination on the threshold question

S.W.3d 437. Although an arbitration provision is subject to the Federal Arbitration Act, courts look to state contract law to decide whether the parties' agreement to arbitrate is valid.[2] *See DIRECTV, Inc. v. Murray*, 2012 Ark. 366, 423 S.W.3d 555. Courts may apply state law to arbitration agreements only to the extent that it applies to contracts in general. *See id.*

The same rules of construction and interpretation apply to arbitration agreements as to agreements in general. *See Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005). Thus, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *See id.* Furthermore, the construction and legal effect of a written contract to arbitrate are to be determined by the court as a matter of law. *See id.* In the instant case, the circuit court found that the arbitration agreement lacked mutuality. This court has recognized that a lack of mutuality renders an arbitration agreement unenforceable or invalid. *See, e.g.*, *The Money Place, LLC*, 349 Ark. 411, 78 S.W.3d 714. We therefore must determine whether the circuit court properly applied Arkansas contract law, which requires mutuality to enforce a contract. *See Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 681 (2004).

This court has observed that mutuality of contract means that an obligation must rest

---

in a motion-to-compel case—that is, whether a valid arbitration agreement exists—we must remand for such a determination. In the instant case, the circuit court made the requisite determination; it found that the element of mutuality of obligation was lacking. Because one of the five elements of a contract was not present, the arbitration agreement was not valid, and the inquiry ends there. If one element is missing, it matters not whether the other elements are present or lacking, as the agreement cannot be valid.

[2]There appears to be no dispute among the parties that the instant arbitration agreement is subject to the Federal Arbitration Act.

on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound. *See id.* A contract, therefore, that leaves it entirely optional with one of the parties as to whether he will perform his promise would not be binding on the other. *See id.*

In the instant case, Alltel contends that there is "'only one reasonable interpretation' of this [arbitration] agreement: all disputes between Alltel and its customers must be arbitrated." To that end, it claims, both the company and its customers are equally bound to arbitrate. At first blush, that might appear to be true, as there is no express reservation by Alltel in the arbitration clause itself to engage in any other remedies other than arbitration:

> Any dispute arising out of this Agreement or relating to the Services and Equipment must be settled by arbitration administered by the American Arbitration Association, using the Wireless Industry Arbitration Rules. Information regarding this procedure may be found at www.adr.org. Each party will bear the cost of preparing and prosecuting its case. We will reimburse you for any filing or hearing fees to the extent they exceed what your court costs would have been if your claim had been resolved in a state court having jurisdiction. The arbitrator has no power or authority to alter or modify the [or this] Agreement or any [or these] Terms and Conditions, including the foregoing Limitation of Liability section. All claims must be arbitrated individually, and there will be no consolidation or class treatment of any claims. This provision is subject to the Federal Arbitration Act.[3]

However, also contained in the terms and conditions is the following provision found prior to the arbitration clause:[4]

---

[3]The 2005 and 2006 Terms and Conditions attached to Alltel's motion to compel also included the following: "You understand and acknowledge that by agreeing to this arbitration clause, you are waiving your right to a jury trial."

[4]This court has previously rejected an appellant's assertion that it was error for the circuit court to consider another provision in the contract, that was outside and independent of the arbitration provision, when evaluating the validity of the arbitration provision and determining that it lacked mutuality. *See Advance Am. Servicing of Arkansas, Inc. v. McGinnis*,

SLIP OPINION

> If *we* do not enforce any right or remedy available under this Agreement, that failure is not a waiver.

(Emphasis added.)

This court has been resolute that there is no mutuality of obligation where one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system. *See Independence Cnty. v. City of Clarksville*, 2012 Ark. 17, 386 S.W.3d 395. As set out above, Alltel clearly reserved to itself the option of pursuing remedies other than arbitration, without the consequence of waiver. Moreover, that reservation and protection was limited solely to Alltel and was not extended to the customer. Succinctly put, Alltel provided itself with an "out" to the required arbitration; Alltel customers, such as Rosenow, however, were limited to pursuing relief against Alltel in the form of arbitration, while Alltel alone was provided absolution if it chose to pursue an alternate remedy.

We have held that an arbitration agreement lacks mutuality when one provision of a contract is inconsistent with the contract's arbitration clause and the two cannot be harmonized. *See, e.g.*, *Asbury Auto. Used Car Ctr. v. Brosh*, 364 Ark. 386, 220 S.W.3d 637 (2005); *Tyson Foods*, 356 Ark. 136, 147 S.W.3d 681. Here, despite both Alltel and its customers being bound to the remedy of arbitration, Alltel, and only Alltel, was permitted to reject that remedy without consequence. It is clear that the parties in this case are treated differently by the foregoing provisions, and "this disparate treatment results in a lack of

---

375 Ark. 24, 289 S.W.3d 37 (2008).

mutuality." *Independence Cnty.*, 2012 Ark. 17, at 8, 386 S.W.3d at 400. The lack of mutuality to arbitrate in the arbitration agreement renders the agreement invalid and unenforceable. *See id.* We therefore affirm the circuit court's order denying Alltel's motion to compel arbitration based on its finding of a lack of mutuality.[5] *See, e.g.*, *Arkansas Diagnostic Ctr. v. Tahiri*, 370 Ark. 157, 257 S.W.3d 884 (2007) (recognizing that this court can affirm a circuit court when it reached the right decision, although it may have announced a different reason). Because we affirm the circuit court's finding of a lack of mutuality on the basis that we do, we need not address Alltel's assertion that the circuit court erroneously considered parol evidence.

We turn then to Alltel's argument that our precedent violates the Federal Arbitration Act because Arkansas law does not require independent mutuality for any other contract provision. Alltel claims that, by requiring mutuality in arbitration agreements, we have placed arbitration provisions on an unequal footing with other contract provisions and have applied a general-contract defense in a manner that disfavors arbitration. We disagree.

As the United States Supreme Court has directed, "the text of § 2 [of the Federal Arbitration Act] declares that state law may be applied '*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" *Doctor's*

---

[5]While the dissent takes issue with our decision in this matter using the analysis that we do, the question presented to this court is whether the circuit court erred in finding a lack of mutuality of obligation. The issue of mutuality of obligation was raised to, and ruled on by, the circuit court. Although we have reached the same result as the circuit court in a different manner, the result, conclusion, or decision is the same—mutuality of obligation is lacking. Had we determined that any other element required for a valid contract was not present, then we would have contravened our precedent. But, to be clear, we have in no way raised an issue sua sponte, because the mutuality-of-obligation issue is squarely before us.

*Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996) (emphasis in original) (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). What courts such as this one may not do, however, is "invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Id*. at 687 (emphasis in original). *See also DIRECTV, Inc.*, 2012 Ark. 366, 423 S.W.3d 555 (citing *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788 (8th Cir. 1998)) (recognizing these axioms). By enacting section 2 of the Federal Arbitration Act, "Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" *Id*. (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)).

In *Casarotto*, the Court held that a Montana statute that conditioned "the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally" was displaced by the Federal Arbitration Act with respect to arbitration agreements covered by the Act. *Id*. Such a "precise, arbitration-specific limitation," however, stands in contrast to this court's application of general Arkansas law regarding the formation of a contract. *Id*. at 687 n.3. Indeed, "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

In *AT&T Mobility, LLC v. Concepcion*, 563 U.S. ___, 131 S. Ct. 1740 (2011), the Court considered whether the Federal Arbitration Act preempted a California rule of law that classified "most collective-arbitration waivers in consumer contracts as unconscionable." 563

SLIP OPINION

U.S. at ___, 131 S. Ct. at 1746. The Court concluded that even though unconscionability was a generally applicable contract defense that could invalidate an arbitration agreement, California's rule of law "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at ___, 131 S. Ct. at 1748.

This court, however, considers the doctrine of mutuality to determine whether there has even been a valid agreement to arbitrate in the first instance, as we would do with any other contract. In furtherance of the "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract," this court "must place arbitration agreements on an equal footing with other *contracts*."[6] *Id.* at ___, 131 S. Ct. at 1745 (emphasis added) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)) and (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)). Therefore, were we not to consider mutuality or the other elements of a contract when examining the validity of an arbitration agreement, we would be operating in contravention of that mandate; in other words, we would be treating arbitration agreements differently from other contracts. This we will not do. Accordingly, we decline Alltel's invitation to reject our precedent, which requires mutuality as an essential element for an enforceable arbitration agreement.[7]

---

[6]We note the Supreme Court's use of the term "contracts," rather than the term "provisions" as asserted by Alltel.

[7]We are cognizant of the opinion of the United States Court of Appeals for the Eighth Circuit in *Southeastern Stud & Components, Inc. v. American Eagle Design Build Studios, LLC*, 588 F.3d 963 (8th Cir. 2009), in which that court arguably approved, perhaps tacitly, a

In light of our conclusion that the circuit court did not err in finding that a lack of mutuality rendered the instant arbitration agreement invalid, we do not address Alltel's second point on appeal that the circuit court erred in failing to enforce the arbitration agreement. *See, e.g.*, *Independence Cnty.*, 2012 Ark. 17, 386 S.W.3d 395. For the foregoing reasons, we affirm the circuit court's second amended order on direct appeal.

In his cross-appeal, Rosenow argues that the arbitration agreement was unenforceable because Alltel waived any right it had to arbitration because it acted inconsistently to any claimed right to arbitrate and failed to assert its right to arbitration until seventy months after the case had been filed. He further contends that the members of the class will be prejudiced if they are compelled to individually arbitrate their claims after eight years of litigation. Our holding on direct appeal that the arbitration agreement was invalid for lack of mutuality is dispositive; therefore, we need not consider Rosenow's argument that Alltel waived its right to arbitration. *See, e.g.*, *Courtyard Gardens*, 2013 Ark. 228, 428 S.W.3d 437.

Affirmed on direct appeal; cross-appeal moot.

BAKER, GOODSON, and HOOFMAN, JJ., dissent.

**COURTNEY HUDSON GOODSON, Justice, dissenting.** I cannot join the majority's opinion for two fundamental reasons. First, the majority disregards precedent by not returning

---

decision by the United States District Court for the Eastern District of Arkansas, *Enderlin v. XM Satellite Radio Holdings, Inc.*, No. 4:06-CV-0032 GTE, 2008 WL 830262 (E.D. Ark. Mar. 25, 2008). In *Enderlin*, the federal district court opined that "Arkansas law requiring mutuality within the arbitration paragraph itself is preempted by the FAA because it places the arbitration clause on unequal footing with other contract terms that do not each have to be mutual." *Enderlin*, 2008 WL 830262, at *10. We respectfully disagree for the reasons set forth above.

this case to the circuit court to rule on a threshold issue of contract formation that was raised by the parties but not ruled on by the circuit court. Second, the majority affirms the mutuality-of-obligation issue based on its own construction of the arbitration agreement, when no party in this case has advanced that argument. Therefore, I must respectfully dissent.

In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered. First, is there a valid agreement to arbitrate between the parties? Second, if such an agreement exists, does the dispute fall within its scope? *HPD, LLC v. TETRA Techs, Inc.*, 2012 Ark. 408, 424 S.W.3d 304 (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)).

In *Bank of the Ozarks v. Walker*, 2014 Ark. 223, 434 S.W.3d 357, the parties disputed, among other things, the existence of a valid arbitration agreement on the ground of mutual assent. The circuit court did not rule on that issue. Instead, the court denied the motion to compel arbitration based on the equitable defense that the arbitration agreement was unconscionable. Recognizing that a question concerning the existence of a valid arbitration agreement is a threshold issue, this court reversed and remanded for the circuit court to resolve the issue of mutual assent. Essentially, this court announced a new rule, holding that a circuit court must decide the threshold issue of contract formation before determining whether the claims fall within the scope of the arbitration agreement and before considering any defenses that might otherwise invalidate the agreement.

This court has also observed in the context of arbitration that the essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual

agreement, and (5) mutual obligations. *Independence Cnty. v. City of Clarksville*, 2012 Ark. 17, 386 S.W.3d 395 (citing *Found. Telecomms., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000)). Thus, the threshold question of whether a valid arbitration agreement exists is not limited to the issue of mutual assent. Rather, that inquiry could encompass any of the elements necessary for contract formation.

In the present case, the parties raised two threshold issues bearing on the question of the existence of a valid arbitration agreement: (1) mutuality of assent, and (2) mutuality of obligation. However, the circuit court ruled only that no valid agreement exists due to the absence of mutual obligations. Because the circuit court did not provide a ruling on mutual assent, that threshold issue remains unresolved. Based on the precedent established in *Bank of the Ozarks*, *supra*, this court should reverse and remand for that issue to be decided.

In *Bank of the Ozarks*, this court enunciated a requirement for the issue of contract formation to be resolved at the circuit-court level. It appears to me that the reason for this rule is that a party should not and cannot be bound to arbitrate a dispute unless there is a valid arbitration agreement. Yet, this rationale is subverted when a circuit court denies a motion to compel arbitration on other grounds without deciding contract formation issues, and this court disagrees with the circuit court's ruling. In that situation, this court reverses and remands for the entry of an order compelling arbitration, leaving unresolved issues of contract formation, as was the case in *LegalZoom.com, Inc. v. McIllwain*, 2013 Ark. 370, 429 S.W.3d 261. Thus, under the rationale of *Bank of the Ozarks*, this untenable result is avoided by requiring rulings on contract-formation issues raised by the parties. Here, the same untenable result can be

14

avoided by requiring the circuit court to rule on all issues of contract formation that are raised by the parties. This ensures that all formation issues can be resolved on appeal. As a result, this case should be reversed and remanded for a ruling on mutual assent, as was done in *Bank of the Ozarks*.

Aside from the failure to follow the precedent set in *Bank of the Ozarks*, it is equally disturbing to me that the majority affirms the circuit court's ruling on mutuality of obligation for a reason that the parties have not developed and on which the circuit court has not ruled. In this case, Rosenow argued that the arbitration agreement lacked mutuality of obligation because Alltel had in the distant past filed suit against approximately twenty of its customers to collect delinquent accounts and also had utilized the services of collection agencies to recover past-due accounts. Rosenow offered documentation evidencing these lawsuits in support of its contention. The circuit court agreed, finding that Alltel had "never used arbitration as a sword" and had "never respected the arbitration provision it sought to enforce here." Further, the court reasoned that the arbitration agreement imposed no real liability on Alltel because Alltel had previously ignored it.

The majority does not address the issue developed below, to wit, whether a party's past actions result in a lack of mutuality of obligation. Instead, the majority, sua sponte, plucks one sentence out of a separate provision in the contract and holds that this sentence renders the arbitration agreement unenforceable on grounds of mutuality. Specifically, the majority relies on the sentence, "If we do not enforce any right or remedy available under this Agreement, that failure is not a waiver," and it interprets this sentence to mean that Alltel reserved to itself

the option of pursuing remedies other than arbitration.

It is axiomatic that this court can affirm a circuit court if the right result is reached, even if it is for a different reason. *Powell v. Lane*, 375 Ark. 178, 289 S.W.3d 440 (2008). However, we may affirm on an alternative basis only if the issue was raised and a record was developed below. *See Ark. State Bd. of Election Comm'rs v. Pulaski Cnty. Election Comm'n*, 2014 Ark. 236, ___ S.W.3d ___. This is so because we must determine the issues upon the record that was made in the circuit court, and issues not raised below cannot serve as the basis for a decision in this court. *Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439. Moreover, this court has been resolute in stating that we will not sua sponte make a party's argument for that party or raise an issue sua sponte, unless it involves the circuit court's jurisdiction. *Jones v. Flowers*, 373 Ark. 213, 283 S.W.3d 551 (2008).

Clearly, the majority has reached well beyond the limited issue presented on appeal, which is based on Alltel's conduct and not a specific provision within the contract. Rosenow simply did not contend that mutuality was lacking within the four corners of the agreement, and this court commits a serious error by exceeding the scope of the issue raised on appeal. The fact that our review is de novo does not provide authority for the majority's action. De novo review does not mean that this court can entertain new issues on appeal when the opportunity presented itself for them to be raised below, and that opportunity was not seized. *Roberts v. Yang*, 2010 Ark. 55, 370 S.W.3d 170. This court routinely declines to address issues for the first time on appeal, even when the issue is subject to de novo review. *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 53, 431 S.W.3d 303; *Ausman v. Hiram Shaddox Geriatric Center*,

16

2013 Ark. 66, 426 S.W.3d 379; *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC*; 2012 Ark. 247, 411 S.W.3d 184; *Daugherty v. Jacksonville Police Dep't*, 2012 Ark. 264, 411 S.W.3d 196; *Bayer CropScience LP v. Schafer*, 2011 Ark. 518, 385 S.W.3d 822; *Lamontagne v. Ark. Dep't of Human Servs*, 2010 Ark. 190, 366 S.W.3d 351.

This court should confine itself to the argument that is actually raised on appeal. The majority decides the issue based on an undeveloped, alternative basis raised by this court for the first time on appeal, and this course of action results in fundamental unfairness, as the party adversely impacted by the majority's holding has had no opportunity whatsoever to challenge this court's own, novel interpretation of the agreement. Therefore, I must vigorously dissent.

BAKER and HOOFMAN, JJ., join.

*Quattlebaum, Grooms, Tull & Burrow PLLC*, by: *Steven W. Quattlebaum, E. B. Chiles IV*, and *Chad W. Pekron*, for appellants.

*Emerson Poynter LLP*, by: *Scott E. Poynter*; and *Arnold, Batson, Turner & Turner, P.A.*, by: *Todd Turner*, for appellees.

*Friday, Eldredge & Clark, LLP*, by: *Kevin A. Crass* and *R. Christopher Lawson*, for amicus curiae Arkansas State Chamber of Commerce.