Cite as 2020 Ark. App. 203

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-19-586

| | |
|---|---|
| ERICA GRAY, AS PARENT AND NATURAL GUARDIAN OF B.B., A MINOR<br><br>APPELLANT<br><br>V.<br><br>MARIANNA HOUSING AUTHORITY<br><br>APPELLEE | **OPINION DELIVERED:** April 1, 2020<br><br>APPEAL FROM THE LEE COUNTY CIRCUIT COURT<br>[NO. 39CV-17-30]<br><br>HONORABLE CHRISTOPHER W. MORLEDGE, JUDGE<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Erica Gray (Gray), acting as next friend and guardian of her minor daughter, B.B., appeals the summary-judgment order entered by the Lee County Circuit Court in favor of the Marianna Housing Authority (MHA), finding that it owed no duty to B.B., a third-grade student, who was seriously injured when she fell into an open water main that was covered by leaves. We affirm.

I. *Facts and Procedural History*

On December 16, 2016, B.B. was walking from school with two friends to her aunt's house. Her aunt, Dorthy Branscomb (Branscomb), was a tenant of the MHA, and she often watched B.B. after school. Located within the MHA's property was a water main, which was a portion of property that the Marianna Water & Sewer Department (Water Department) exclusively owned, controlled, inspected, and maintained. The Water Department admittedly

had the duty to inspect the water main, including ensuring the water main's lid remained closed and locked—and it alone had possession of the keys to the lock.

For at least a year, B.B. had walked this path to Branscomb's home, and she knew of the water main's location. B.B. and Gray described the water main as something like a "hole." Gray believed the water main was a known hazard—one she would think people would know about and avoid. Gray explained that is why she never warned B.B. of it.

The day before the accident, and allegedly at all other times, B.B. saw the water main with its lid closed. But on December 16, the water main's lid was off, and leaves had fallen on the water main. None of the parties knew the lid was missing or for how long. B.B. testified that she "forgot about the hole" and was not watching her step because she was distracted while talking with her friends about a Christmas party at school. She stated that had she remembered the water main was there and not been distracted she would have avoided this path. But that day B.B. strayed from the public sidewalk running along the MHA's property, eventually stepping and falling into the open water main, causing her injuries.

Gray brought her complaint in negligence, and her amended complaint included claims against both the City of Marianna, Arkansas, and the MHA. Gray took a voluntary nonsuit without prejudice as to the city following proof that the Water Department was part of the city, which had no insurance; accordingly, only the MHA remained as a defendant.

At the hearing, plaintiff's counsel argued that B.B. was a public invitee; that the water main was public property; and that the MHA allowed children to cross the property daily because it did nothing to keep them out—with neither fencing nor signage. Counsel

2

submitted that B.B. did not have to prove a benefit to her presence on the land as a public invitee and claimed that the MHA knew she was on the property because children cross it daily after school. Counsel argued that even if B.B. was a licensee, the MHA owed B.B. a duty because it knew children crossed its land and had a duty to warn of hidden dangers, citing Arkansas Model Jury Instruction-Civil 1103.

Counsel argued that whether the water-main hole was open and obvious is a factual question. Further, he noted that B.B. forgot about the hole because she was excited and talking about the Christmas party—accordingly, he argued that a factual question exists about whether B.B. forgot about the water main. Regardless, counsel maintained that the MHA had a duty to warn because of the existence of a hidden defect and that B.B. might forget it was there.

Counsel for the MHA argued that the area in question is not a public setting to which B.B. would be an invitee and that the water main is entirely controlled and owned by the Water Department. Counsel stressed that the water main is located within a utility easement; that B.B. was a licensee who knew of the water-main hole; and that there was no duty to warn because there was no hidden danger.

The circuit court granted summary judgment and entered its order on April 18, 2019, which states in its entirety:

1. That B.B. testified that she knew of the presence of the alleged hole on the premises, which property was exclusively owned by the Marianna Water & Sewer Department.

2. That B.B. was a licensee while she was on the Defendant's property because she was a social guest of her aunt, a tenant of the Marianna Housing Authority, and provided no benefit to the Defendant.

3. That Plaintiff failed to allege in her complaint any willful or wanton conduct against the Defendant.

4. That the presence of B.B., a licensee, was not known to Defendant in order to impose a duty upon Defendant.

5. That although Defendant did not know of B.B.'s presence, whether Defendant had such knowledge was immaterial because B.B.'s claims arise from a condition located on property owned exclusively by the Marianna Water & Sewer Department.

6. That Defendant had no duty to warn B.B. of an open and obvious danger.

7. That Defendant had no duty to warn B.B. of a condition located on property not owned by the Defendant.

8. That for the aforementioned reasons, and those given orally from the bench at the conclusion of the March 19, 2019 hearing, Defendant Marianna Housing Authority's Motion for Summary Judgment is hereby GRANTED, and all of Plaintiff's claims against Defendant Marianna Housing Authority should be and hereby are DISMISSED WITH PREJUDICE.

Gray filed a timely notice of appeal on April 26.

II. *Standard of Review and Applicable Law*

Summary judgment is granted by a circuit court when "no genuine issues of material fact exist requiring litigation and . . . the moving party is entitled to judgment as a matter of law." *Duran v. Sw Ark. Elec. Coop. Corp.*, 2018 Ark. 33, at 5, 537 S.W.3d 722, 726. Although the evidence must be viewed most favorably to the nonmoving party, "[o]nce the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact." *Hadder v. Heritage Hill Manor, Inc.*, 2016 Ark. App. 303, at 7–8, 495 S.W.3d 628, 633. The opposing party cannot "rest on the mere allegation of her pleadings; instead, her response by affidavits or other evidence . . . must show specifically that there is a genuinely disputed issue of

material fact." *Id.* "Conclusory allegations are insufficient to create a fact issue in a summary–judgment situation." *Id.*

To prevail on a claim of negligence, Gray must prove that the MHA owed a duty to B.B., that the MHA breached that duty, and that the breach was the proximate cause of B.B.'s injuries. *Duran*, 2018 Ark. 33, at 6, 537 S.W.3d at 726. "Duty arises out of the recognition that the relation between individuals may impose upon one a legal obligation for the benefit of another." *Id.* Whether a duty is owed is always a question of law and never one of fact for the jury. *Hope Med. Park Hosp. v. Varner*, 2019 Ark. App. 82, at 5, 568 S.W.3d 818, 822. The legal question of duty is reviewed de novo. *Id.* If the court finds that no duty is owed, summary judgment is appropriate. *Duran*, 2018 Ark. 33, at 7, 537 S.W.3d at 727.

## III. *Discussion*

Gray submits that the MHA, through its agents, servants, or employees knew that B.B. and other children walked on its property daily, and accordingly, it had a duty to warn of a hidden danger, irrespective of whether B.B. was a licensee or invitee. Gray claims that under either standard, there was a duty of care about which a jury should hear. Despite the circuit court's concluding there was no duty, Gray submits that a jury might have found that the duty was violated and that the failure to warn was a proximate cause of B.B.'s injuries.

Gray acknowledges that whether there is a duty is a question of law, but she notes that it also depends on whether the MHA knew of B.B.'s presence on the property and whether the hazard was "open and obvious." Gray asserts that these are factual questions and required a jury trial. Gray also claims that it was no defense that the danger was created by another because the water main was located on the MHA's land. Gray submits that at most,

the MHA granted an easement to the Water Department but still owned the land, while the Water Department owned the physical equipment in the water-main hole.

We hold that the circuit court did not err in finding that the MHA owed no duty to inspect, maintain, or issue warnings about a condition located on property exclusively owned, inspected, and maintained by the Water Department.

In premises-liability claims, liability cannot attach to the defendant unless the defendant owns or occupies the property that allegedly caused the plaintiff's injury. This principle applies to invitees. *See Varner*, 2019 Ark. App. 82, at 5, 568 S.W.3d at 822. The above applies equally to licensees. *See Heigle v. Miller*, 332 Ark. 315, 319, 965 S.W.2d 116, 119 (1998); *Bader v. Lawson*, 320 Ark. 561, 564, 898 S.W.2d 40, 42 (1995).

It is undisputed that the water main was not owned or maintained by the MHA—the Water Department admitted it "had exclusive ownership and control of the water main at issue." It also admitted it "exclusively maintained the water main at issue." According to the Water Department, its employees are charged with the duty of inspecting the water main. Specifically, the Water Department acknowledged that it checked the water main once a month to read the meter as well as to ensure the lid was closed and locked. Moreover, the keys to that lock were solely in the Water Department's possession.

Because the MHA established a prima facie entitlement to summary judgment with this evidence, Gray could not "rest on the mere allegation of her pleadings; instead, her response by affidavits or other evidence . . . must show specifically that there is a genuinely disputed issue of material fact." *See Hadder*, 2016 Ark. App. 303, at 7–8, 495 S.W.3d at 633. Gray failed to produce evidence refuting these admissions, and in her brief before this court,

6

Gray continues to disregard this evidence and to assert that the MHA owned the property at issue. Gray's brief is devoid of any supporting legal authority that the MHA owed B.B. a duty to inspect, maintain, or warn of a condition located on property owned by a third party. *See Lakeside Nursing & Rehab. Ctr., Inc. v. Rufkahr*, 2019 Ark. App. 142, 572 S.W.3d 461 (holding this court will not consider arguments unsupported by convincing argument or sufficient citation to legal authority).

We recently affirmed an award of summary judgment in a factually similar case. In *Havner v. Northeast Arkansas Electric Cooperative*, 2017 Ark. App. 111, at 4–5, 514 S.W.3d 490, 493, the appellant was injured in a motorcycle accident when a vehicle traveling in front of him "caught a low-hanging cable strung across the road and pulled the cable down." *Id*. at 1–2, 514 S.W.3d at 492. The appellee owned the pole to which the cable was attached; however, a third party owned the cable. *Id*. The circuit court granted appellee's motion for summary judgment, and on appeal, this court found it was "undisputed that [appellee] was not the owner of the cable." *Id*. at 5, 514 S.W.3d at 493. Rather, appellee's "only connection with the cable is that the cable was attached to its poles." *Id*. We rejected the appellant's theory that appellee had a "duty to inspect, maintain, and repair the cable," which belonged to a third party. *Id*. Instead, the court held that appellee "owed no duty to" appellant under the circumstances and affirmed the order granting summary judgment. *Id*.

Given the undisputed facts, the MHA was neither the owner nor the occupant of the property at issue—specifically the water-main hole into which B.B. fell. As in *Havner*, the necessary connection of ownership or occupancy of the property causing B.B.'s alleged injuries is missing. *See Havner*, 2017 Ark. App. 111, at 4–5, 514 S.W.3d at 493. When viewed

7

in conjunction with the Water Department's admission that its employees had the sole duty to inspect and maintain the water main and associated property, we hold that the MHA did not owe B.B. a legal duty to inspect, maintain, or repair the Water Department's property. *See id*. Accordingly, the circuit court correctly determined that summary judgment in favor of the MHA was proper. *Id.*; *see also Duran*, 2018 Ark. 33, at 6–7, 537 S.W.3d at 726–27.

Affirmed.

SWITZER and MURPHY, JJ., agree.

*Robert S. Tschiemer*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *William M. Griffin III* and *Kyle D. Kennedy*, for appellee.